**STATE of Missouri, Plaintiff-Respondent,**

v.

**Frank Russell RICHARDSON, Jr., Defendant-Appellant.**

**No. 11204.**

Missouri Court of Appeals, Southern District, Division Two.

April 14, 1980.

C. B. Fitzgerald, Fitzgerald & Fitzgerald, Warrensburg, for defendant-appellant.

John Ashcroft, Atty. Gen., Mary C. P. Pincus, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

By information filed in the Circuit Court of Cooper County, defendant Frank Russell Richardson, Jr., was charged with first-degree robbery as defined and denounced by former § 560.120, RSMo 1969, now repealed. Upon defendant's application, a change of venue was granted, and pursuant to Rule 30.04, V.A.M.R., the cause was removed to Camden County for trial. A jury found defendant guilty and assessed his punishment at imprisonment for 7½ years. Defendant appeals.

The sufficiency of the evidence to support the judgment of conviction is not challenged; therefore the factual background of the appeal may be very briefly stated. The premises upon which the robbery was committed are described as Stanley's Drive-In Liquors, 749 Main Street, Boonville, Missouri.

One William H. Stuesse, an employee, was working on August 14, 1976. About 10:15 p. m., defendant, a black male, entered the drive-in, stayed a few minutes and left the store. Shortly thereafter he returned. Mr. Stuesse was "right behind the [cash] register due to the fact that I had just made change." Defendant was "[r]ight on the opposite side of the counter"

"between 35 and 36 inches" from Stuesse. Thereupon, defendant "came right around to the right hand end [sic] of the [cash] register and leveled a gun [sic][1] at [Stuesse] and he said, 'this is it, put the money in the brown bag and do not touch anything.'" Stuesse complied "[Because] I valued my life, I didn't want to get shot." Defendant took $492 in cash. The defendant escaped from custody on September 29, 1976, while he was awaiting trial. He was again taken in custody at Springfield, Illinois, on April 15, 1977, and was returned to Cooper County.

Upon trial, defendant offered alibi as a defense. He and a purported female companion, one Dorothy Williams, testified defendant was either in or near Columbia, Missouri, when the robbery was committed

In this court, the defendant has briefed and argued two points. The first is that the trial court erred in ordering disclosure of the names of witnesses to be called by the defendant because such action "violated the work product doctrine and the attorney-client relationship." The record shows that on June 8, 1977, defendant filed a motion for complete disclosure by the State pursuant to former Rule 25.32 (now Rule 25.03), V.A.M.R. On June 20, 1977, the State countered with a request for disclosure as provided by former Rule 25.34 (now Rule 25.05), V.A.M.R. Counsel for defendant thereupon objected in writing, upon the following grounds, among others: "a) Supreme Court Rule 25.34 is unconstitutional [because] it takes from the defendant the . . . right against self incrimination [sic] [as guaranteed] in the Fifth Amendment [to] the United States Constitution and Article 1, Section 19 of the 1945 Constitution of the State of Missouri. . . . c) Disclosure of the facts requested invade the work product and trial preparation by the attorney of record . . . ." The trial court denied the motion, but did not compel compliance with the State's request. On August 17, 1978, the State filed a motion to compel disclosure. The same day,

1. Described in the record as a "blue steel automatic pistol."

without compulsion by the court, defendant filed a disclosure statement advising the Prosecuting Attorney that he would rely on the defense of alibi and would call Dorothy Williams as a witness. On August 24, the trial court refused to compel further disclosure by the defendant.

■ we have examined the cases cited by counsel; we have carefully attended his argument that former Rule 25.34 was on its face violative of the Fifth Amendment. We are aware of the misgiving attendant upon the promulgation of Fed.R.Crim.P. 16(b), which is analogous to, but more limited than former Rule 25.34. See, e. g., 1 C. Wright, Federal Practice and Procedure § 256 (1969); 8 Wigmore, Evidence § 2264, p. 379 (McNaughton rev. 1961). The short answer to defendant's argument in context, assuming our competence to consider it, is that there appears to have been no compulsion, therefore the privilege against self-incrimination was not infringed. 8 Wigmore, supra, § 2263. Moreover, all defendant actually disclosed was that he intended to rely upon the defense of alibi and the name of the witness he intended to call to prove his defense. Even compelled disclosure of that much information would infringe no federally protected right, in view of defendant's reciprocal right of discovery. *Williams v. Florida*, 399 U.S. 78; 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). And, defendant's argument that Rule 25.34 was unconstitutional on its face rings hollow in light of the provision that the State's right of discovery was specifically "subject to constitutional limitations."

■ We have noticed this argument only because it was advanced with great sincerity and in good faith. No real constitutional point is presented. Reduced to its essence, the defendant's argument is simply that the names of witnesses were *not discoverable* by the State under former Rule 25.34. Comparisons to Fed.R.Crim.P. 16 and civil discovery proceedings are inapt; former Rule 25.34(A)(2) provided for the discovery of the names and addresses of witnesses whom defendant intended to call. The names of such witnesses were in terms dis-

coverable and therefore defendant's point is without merit.

■ Defendant further assigns error to the trial court's refusal to give his tendered Instruction "A", which read:

"The Court instructs the jury that where the prosecution has offered identification testimony, that is, the testimony of an eye-witness [sic] that he saw the defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. The witness' opportunity to observe the perpetrator during the commission of the act charged is of great importance in determining the credibility of his identification. The testimony of the witness that he is positive of his identification may be considered by you, but does not relieve you of the duty to carefully consider his identification testimony and to reject it if you find that it is not reliable. Careful scrutiny of such testimony is especially important, when, as in this case, *it is the only testimony offered* by the prosecution to connect the defendant with the act charged." (our emphasis)

This instruction was quoted, not approved, by this court in *State v. Murphy*, 508 S.W.2d 269, 275–276 (Mo.App.1974). The court did notice and quote from the holding of our Supreme Court in *State v. Cline*, 452 S.W.2d 190, 193[4] (Mo.1970), that positive identification by a single eyewitness, with explanation of discrepancies, is substantial evidence of the guilt of the defendant, especially if the witness was close to and personally saw the face of the defendant, even though the time of confrontation was short. *State v. Murphy*, supra, 508 S.W.2d at 274–275[5]. Defendant cites us to several cases indicating that instructions of the order of his tendered Instruction "A" are cautionary instructions, to be given in the discretion of the trial court. Perhaps so, but in the circumstances of this case, giving Instruction "A" would have amounted to positive misdirection. The State could

not instruct upon the defendant's flight, MAI–CR 5.40, but evidence of his escape was affirmative evidence tending to show his guilt. *State v. Holt,* 465 S.W.2d 602, 607[9] (Mo.1971).

No error appears; accordingly the judgment is affirmed.

All concur.